# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ENDURACARE THERAPY MANAGEMENT, INC., | ) ) ) | CASE NO. 4:09 CV 1969 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| JILLTIN MANAGEMENT GROUP, INC., et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | ) ) | |

Before the Court is the motion (Doc. No. 21) of defendant THI of Ohio at Imperial, LLC to vacate the default judgment entered against it on November 12, 2009. Plaintiff has filed its opposition to the motion (Doc. No. 22) and THI filed a reply (Doc. No. 23). Plaintiff also filed a motion (Doc. No. 24) to strike THI's reply because it was untimely; THI has opposed that motion (Doc. No. 25). For the reasons discussed below, Doc. No. 21 is **GRANTED** and Doc. No. 24 is **DENIED**.

## I. BACKGROUND

On August 21, 2009, plaintiff Enduracare Therapy Management, Inc. ("Enduracare")[1] filed suit against Jilltin Management Group ("Jilltin"),[2] THI of Ohio at Imperial,

---

[1] "Enduracare is in the business of providing physical, occupational, and speech therapy services to residents residing in nursing homes owned or operated as licensed long term care and skilled nursing facilities" under Title XVIII. (Compl. ¶ 1.)

[2] Jilltin is a health care management corporation. (Compl. ¶ 4.)

LLC ("THI"),[3] and Baltic Avenue Enterprises, LLC ("Baltic")[4] to recover unpaid costs of therapy services performed for residents at Imperial Skilled Care Center ("Imperial") pursuant to a written agreement entered into on January 21, 2008 between Imperial and Enduracare, and for residents at Pleasant View Nursing Home ("Pleasant View") pursuant to a written agreement entered into on March 4, 2005 between Baltic and Enduracare.[5]

Defendants Jilltin and Baltic filed a joint answer on September 24, 2009. (Doc. No. 10.) Although THI was served by personal service on September 2, 2009 (*see* Doc. No. 5), it failed to move or otherwise plead in response to the complaint. On Enduracare's application, default was entered by the Clerk on October 30, 2009 and a copy of the entry was mailed by the Clerk to THI at its address of record. (Doc. No. 12.)

On November 5, 2009, Enduracare filed a motion for default judgment. (Doc. No. 13.) On November 12, 2009, default judgment in the amount of $181,565.58 was entered against THI. (Doc. No. 14.) Later that same day, an attorney appeared on THI's behalf and a motion to vacate the Clerk's *entry* of default was filed. (Doc. No. 16.)

On November 12, 2009, the Court issued an order noting that Doc. No. 16 had been filed and directing the parties to confer to determine whether they could resolve the issue and, if not, directing THI to file an amended motion seeking to set aside the *judgment* of default. A briefing schedule was set.

On December 3, 2009, THI timely filed the instant motion to vacate the default judgment and, having been fully briefed, the matter is ripe for determination.

---

[3] THI operates a skilled nursing facility known as Imperial Skilled Care Center located in Warren, Ohio. (Compl. ¶ 2.)

[4] Baltic operates a nursing facility known as Pleasant View Nursing Home located in Lisbon, Ohio. (Compl. ¶ 3.)

[5] The latter agreement is not implicated in the instant motion.

## II. DISCUSSION

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." The rule distinguishes between an *entry* of default and a *judgment* of default.

To set aside an *entry* of default, there need be only "good cause." Three equitable factors are considered in determining whether good cause has been shown: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006)[6] (*quoting Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992), *citing United Coin Meter Co. Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983)). Where the issue is whether to set aside an *entry* of default, balancing the three equitable factors is required. *Waifersong*, 976 F.2d at 292.

In contrast, where, as here, a default *judgment* is sought to be set aside, lack of culpability on the part of the defendant must be established first before the defendant is allowed to offer proof on the other two factors. *Berthelsen v. Kane*, 907 F.2d 617 (6th Cir. 1990). When an entry of default has ripened into a default judgment, the three equitable factors must be considered, but the Court must also "determine whether the [defaulting party] has met the stricter requirements of Rule 60(b)." *Burrell*, 434 F.3d at 832 (*citing Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996)).

> [. . .] Public policy favoring the finality of judgments is reflected in the more specific requirements of Rule 60(b) that apply once an actual default judgment has been entered and damages have been calculated. *Waifersong*, 976 F.2d at 292. But the competing policy consideration that values the disposition of cases on their merits dictates that the court "should . . . construe[ ] all ambiguous or

---

[6] *Cert. denied*, 549 U.S. 913 (2006); *reh'g denied*, 549 U.S. 1103 (2006).

>disputed facts in the light most favorable to the defendant[ ]." *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir.1987) (reversing the denial of relief from a default judgment because the defendant had a credible explanation for its delay in filing an answer) (citation and quotation marks omitted). Consequently, all factual doubts [. . .] should be resolved in favor of the [defaulting party.]  *See Thompson*, 95 F.3d at 434.

*Burrell*, 434 F.3d at 832.

>In *Waifersong*, *supra*, the court elaborated:

>[. . .] when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry. When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds [. . .] under Rule 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

 976 F.2d at 292.

In its motion, THI argues that it mistakenly relied upon the other defendants to represent its interests by filing an answer on its behalf. In an affidavit attached as Exhibit B to the motion, Kristi Anderson, general counsel of Fundamental Administrative Services, LLC ("FAS"), attests that FAS was under contract with THI to perform various administrative support services, including legal support. (Anderson Aff. ¶ 3.) FAS provided these services to THI, who previously operated Imperial. (*Id*. ¶ 4.) On January 18, 2008, THI and LFMC Management Co., Ltd ("LFMC") entered into an Operations Transfer Agreement concerning the operation of Imperial. The agreement became effective as of 12:01 a.m. on January 19, 2008 and, as a result, all interest that THI had in Imperial was transferred to LFMC. (*Id*. ¶¶ 5-6.)

4

In early September 2009, Ms. Anderson received a copy of the summons and complaint in this case. Upon her review of the complaint, she noted that the service contract at issue in the case was executed after THI transferred all its interest in Imperial to LFMC. She contacted one of the officers at LFMC (either Michael Slyk or Timothy Chesney) who assured her that Jilltin, the company that LFMC had hired to manage Imperial, would also defend THI's interest in the litigation. Because this arrangement was acceptable to Ms. Anderson, she did not forward the complaint to Ohio counsel. (*Id.* ¶¶ 7-10.)

It was not until she received a copy of plaintiff's motion for default that she became aware that Jilltin had failed to file an answer on THI's behalf. She immediately contacted Ohio counsel in an effort to intervene and stop the entry of default (*id.* ¶ 11); however, she was too late because, on the very day local counsel made an appearance and moved to set aside the entry of default, this Court issued its default judgment order. (*See* Doc. Nos. 14, 15, 16.)

Ms. Anderson asserts that her reliance on representations made by an officer of LFMC was reasonable and that THI's failure to answer the complaint was based on either "mistake" or "excusable neglect."

In opposition, Enduracare argues THI never made any mention of reliance on representations of LFMC when it initially moved to set aside the default entry and that it should not now be allowed to assert a new position. However, this Court has no reason to think the affidavit testimony of Ms. Anderson is untrue and, in fact, the Court is obligated to construe all disputed facts in favor of the defaulting defendant.

Enduracare also argues that the judgment should not be vacated simply because THI's "chosen strategy in response to the Complaint was to allow a separate entity, and

5

potentially an adverse entity, to file an answer on [its] behalf [. . .] and to otherwise protect [its] interests without any oversight, due diligence, or even the slightest concern for the potential consequences of inattention." (Opposition, Doc. No. 22 at 3.) Enduracare asserts that this strategy constitutes neither mistake nor excusable neglect.

In reply, THI argues that its agent, Ms. Anderson, took action by speaking to LFMC and reasonably relied on LFMC's representations that THI's interests would be protected by Jilltin. At the time Ms. Anderson spoke with the officer of LFMC, she was already aware that the complaint alleged breach of a service contract that arguably has nothing to do with THI. She also knew that the Operations Transfer Agreement between THI and LFMC contained an indemnification clause that would probably be applicable in this case. (*See* Doc. No. 21 at 35, ¶ 9.13(b)). She reasonably believed that LFMC would honor its indemnification responsibilities under the Operations Transfer Agreement. This, THI argues, is not reckless disregard for its interests but only, at most, a lapse in judgment on the part of Ms. Anderson.

In Doc. No. 24, Enduracare argues that the reply brief of THI should be stricken from the record because the Court had set a deadline of December 28, 2009, but the brief was not filed until December 31, 2009. Although this Court does not condone late filings, since it was a reply brief (i.e., the "last word" on the motion), Enduracare was not prejudiced in any way. Therefore, the Court denies Doc. No. 24. However, the Court hereby places counsel for THI on *clear notice* that future disregard of deadlines will result in late-filed documents being stricken from the record.

In light of the affidavit of Ms. Anderson, the Court is of the view that THI's failure to move or otherwise plead in response to the complaint was the result of either mistake or excusable neglect within the meaning of Rule 60(b)(1). Therefore, the Court must now

consider the other two factors for setting aside a default judgment, that is, whether THI has a meritorious defense and whether Enduracare will be prejudiced if the judgment is set aside.

The Therapy Services Agreement on which Enduracare sues was between Imperial and Enduracare and became effective on January 22, 2008, after THI transferred its interest in Imperial to LFMC. (Anderson Aff. ¶ 8.) In addition, the Operations Transfer Agreement between THI and LFMC contains an indemnification clause. Given these two facts, which the Court takes as true solely for the purpose of this motion, the Court is of the preliminary view that THI has a meritorious defense to the complaint.

Although a default judgment was entered against THI, the case continues and is in its very early stages against Jilltin and Baltic. In fact, it has not yet been scheduled for a Case Management Conference. Accordingly, this Court can see no prejudice to Enduracare if the default judgment against THI is set aside and THI is allowed to defend its position.

The Court concludes that THI's failure to answer the complaint was the result of mistake and/or excusable neglect, that THI has a meritorious defense to the complaint, and that Enduracare will not be prejudiced by the setting aside of the default judgment against THI.

### III. CONCLUSION

For the reasons set forth above, Doc. No. 24 is **DENIED**. Further, Doc. No. 21 is **GRANTED** and the Default Judgment against defendant THI of Ohio at Imperial, LLC (Doc. No. 14) is **VACATED** and **SET ASIDE**.

Defendant THI of Ohio at Imperial, LLC is directed to move or otherwise plead in response to the complaint by no later than April 9, 2010.

The Court will, by separate order, schedule the Case Management Conference for a date after April 9, 2010.

**IT IS SO ORDERED**.

Dated: March 26, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**